UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

| | |
|---|---|
| DERRICK A. ARMSTRONG, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 6:13-179-KKC |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| A.W. SALINAS, *Acting Warden*,[1] ) | **AND ORDER** |
| ) | |
| Respondent. ) | |

\*\*\*\*\* \*\*\*\*\* \*\*\*\*\* \*\*\*\*\*

Derrick A. Armstrong is an inmate confined by the Bureau of Prisons ("BOP") in the Federal Correctional Institution ("FCI")-Manchester located in Manchester, Kentucky. Armstrong has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the manner in which the BOP is executing his sentence. [R. 1] Armstrong seeks an order directing the BOP to transfer him to the custody of the Ohio Department of Corrections. [*Id*.] Armstrong has paid the $5.00 filing fee. [R. 2]

The Court must evaluate Armstrong's habeas petition to determine whether "it plainly appears from the petition and any attached exhibits that [he] is not entitled to relief." R. Governing § 2254 Cases 4 (applicable to Section 2241 cases through Rule 1(b)).[2] If it appears from the face of

---

[1] Armstrong named "K." Edenfield, the former Warden of FCI-Manchester, as the Respondent to this proceeding. The Court takes judicial notice of the fact that "K." Edenfield is no longer the Warden of FCI-Manchester; that until February 9, 2014, "A.W." Salinas is the Acting Warden of FCI-Manchester; and that on February 9, 2014, "S." Butler will become the Warden of FCI-Manchester. The Clerk of the Court will therefore be directed to substitute "A.W. Salinas," the Acting Warden of FCI-Manchester, as the respondent to this proceeding.

[2] The Court evaluates Armstrong's habeas petition under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage of the case, the Court accepts his factual allegations as true and liberally construes the legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

the § 2241 petition that relief is not warranted, the Court may summarily deny the petition. *Blevins v. Lamanna*, 23 F. App'x 216, 218 (6th Cir. 2001); *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

The Court has reviewed the petition and determined that Armstrong has not alleged facts which would entitle him to relief under § 2241, and will therefore deny his habeas petition.

## BACKGROUND
### 1. Armstrong's Federal and State Convictions

In February 2003, Armstrong was arrested in Montgomery County, Ohio, after a warrant-based search of his home led police to find drugs and a firearm. On February 28, 2003, Armstrong was indicted in the Common Pleas Court of Montgomery County, Ohio. *See State of Ohio v. Derrick A. Armstrong*, Case No. 2003 CR 00609/1 (available at http://www.clerk.co.montgomery.oh.us (last visited on January 28, 2014)). Armstrong was released from police custody on bond, but he eventually pled no contest to the resulting charges and was thus convicted of three state crimes: two counts of possession of cocaine, other than crack cocaine (25 grams but less than 100 grams), and one count of having a weapon while under a disability. [*Id*.] Before imposing the sentence, however, the trial judge gave the parties time to litigate the constitutional validity of the search warrant that led to Armstrong's arrest.

On September 18, 2003, before the parties had fully litigated the search warrant issues, and before Armstrong was sentenced in state court, state and federal officials arrested Armstrong and two other men on Ralliston Avenue in Dayton, Ohio, and charged them with various drug and firearm offenses. [R. 1-2, pp. 32-38] The next day, September 19, 2003, the state charges against Armstrong were dismissed, but Armstrong remained in jail because federal authorities had initiated

criminal proceedings against him.

On September 22, 2003, the Drug Enforcement Administration ("DEA") filed a complaint against Armstrong in federal court in Dayton, Ohio. *United States v. Armstrong*, No. 3:03-CR-126 (W.D. Ohio, 2003) [R. 1, therein] On that same date, a federal arrest warrant was issued for Armstrong. [R. 2, therein] On September 23, 2003, the Magistrate Judge conducted a preliminary and detention hearing and determined that the DEA had probable cause to believe that Armstrong had committed an offense. [R. 6, therein] The Magistrate Judge bound Armstrong over to the Grand Jury and remanded him to the custody of the United States Marshals. [*Id.*]. On October 14, 2003, while Armstrong was awaiting sentencing in the Common Pleas Court of Montgomery County on his state conviction (stemming from the February 2003 charges), he was formally indicted in the federal proceeding on various federal drug and firearm offenses stemming from his arrest on September 18, 2003. *United States v. Armstrong*, No. 3:03-CR-126 [R. 9, therein]

On April 22, 2004, while Armstrong was in federal custody, the Montgomery County Common Pleas Court sentenced him to five years of imprisonment for the drug conviction and a concurrent 10-month term for the weapon conviction in Case No. 2003-CR-609/1. *See* 4/22/04 "Termination Entry," Case No. 2003-CR-609/1 (available at http://www.clerk.co.montgomery.oh.us ); *see also* 4/21/06 Letter from Montgomery County Prosecuting Attorney [R. 1-2, p. 2]. Armstrong's state sentence was affirmed on direct appeal. *See State v. Armstrong*, No. 20515, 2005 WL 994689 (Ohio Ct. App. Apr. 29, 2005).

On July 14, 2004, Armstrong pleaded guilty in federal court to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), possessing a firearm during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1), and possessing cocaine, cocaine base,

3

and marijuana for intended distribution in violation of 21 U.S.C. § 841(a)(1). *United States v. Armstrong*, No. 3:03-CR-126 [R. 36, therein]  On October 8, 2004, the district court sentenced Armstrong to a 216-month prison term and a 5-year term of supervised release. [*Id*., R. 39, therein][3] Armstrong appealed, but his sentence was affirmed. *See United States v. Armstrong*, No. 04-4362 (6th Cir. Sept. 13, 2005) (unpublished).

In April 2006, the State of Ohio filed a detainer for Armstrong with federal prison authorities. By letter dated May 13, 2009, the Montgomery County Prosecutor's Office informed an official at FCI-Manchester that "...due to the prosecution of his federal charges, Mr. Armstrong was never transported to the Correctional Reception Center in Columbus, Ohio after being sentenced in the Montgomery County case.  Therefore, the Ohio Bureau of Sentence Computation has no record of this conviction and has, to date, given him no credit for, any concurrent jail time served." [R. 1-2, p. 3] In that letter, the Montgomery County Prosecutor's Office also asked the federal authorities to keep the detainer on file and to notify the State when Armstrong was available to begin serving his Ohio sentence. [*Id*.]

## 2.  Armstrong's Prior § 2241 Petition

In July 2010, Armstrong filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in federal court in Ohio, alleging that the Ohio detainer violated his rights by delaying the expiration of his sentence, depriving him of early release eligibility regarding his federal sentence, and lengthening the duration of his federal confinement. *United States v. Armstrong*, No. 3:10-CV-275-TMR-SLO (S.D. Ohio, 2010) [R. 1, therein]  Armstrong claimed that federal authorities denied

---

[3] Subsequent amended judgments reduced Armstrong's federal sentences to 180 months. [R. 75 and 81, therein]

4

him due process and abused their authority by denying an administrative transfer to the CRC for prompt calculation of his state sentence. [*Id*.] On October 19, 2010, the district court *sua sponte* denied the § 2241 petition and entered judgment in favor of the respondents. [R. 6 and 7, therein]

Armstrong appealed, arguing that his federal sentence should have run concurrently with his state sentence. The Sixth Circuit concluded that Armstrong's claims that the Ohio detainer violated his rights by delaying the expiration of his sentence, deprived him of early release eligibility regarding his federal sentence, and lengthened the duration of his federal confinement rested on the assumption that his state and federal sentences were to run concurrently with one another. *Armstrong v. Hogsten*, No. 10-4432, p. 2 (6th Cir. Feb. 29, 2012) [R. 1-2, p. 15] The Sixth Circuit observed that the written sentencing judgment did not mention Armstrong's state sentences, but that the federal sentencing transcript indicated that the district court intended to run Armstrong's federal sentence concurrently with his previously imposed state sentences. [R. 1-2, p. 3] The Sixth Circuit thus remanded the case "...to clarify the facts on this issue." [*Id*.]

Pursuant to the remand, the district court amended Armstrong's original sentencing entry and his two subsequent sentence reduction orders on March 12, 2012, to reflect that his federal sentences are to run concurrently with "...any State sentence of incarceration being served at the time of original sentence on October 8, 2004." *United States v. Armstrong*, No. 3:03-CR-126-TMR-MRM [R. 82, therein]; *see also* attachment to § 2241 petition [R. 1-2, pp. 17-18]

### 3. Armstrong's Recent Administrative Remedies

Between August 2012, and February 2013, Armstrong filed a series of administrative grievances asking the BOP to return him to state custody so that he could begin serving his state sentence. Alternatively, Armstrong requested that the BOP to file a motion asking the district court

5

to reduce his federal prison term and grant him consideration for halfway house placement. Armstrong argued that he should have been allowed to serve his state sentence first because the State of Ohio had primary jurisdiction over him and federal authorities did not.

On August 29, 2012, former FCI-Manchester J.C. Holland denied Armstrong's request for an administrative remedy, stating that the BOP does not request district courts to reduce inmates' sentences, and that Armstrong could not be considered for halfway house placement because the State of Ohio had lodged a detainer against him. [R. 1-2, p. 10] Armstrong appealed to the BOP Mid-Atlantic Regional Office ("MARO"), but on December 12, 2012, the MARO denied Armstrong's appeal. [R. 1-2, p. 11]. The MARO disputed Armstrong's assertion that federal authorities lacked primary jurisdiction over him, stating,

> Investigation of your complaint shows that you were in custody of the Drug Enforcement Agency on September 19, 2003. A review of your sentence computation shows that your federal sentence began on October 8, 2004, the day you were sentenced in United States District Court for the Southern District of Ohio. You received jail credit for 386 days (September 18, 2003, through October 7, 2004). You were designated and arrived at FCI Manchester on March 14, 2005, and have remained in federal custody since that day.

*Id*.

The MARO further explained that the BOP had no control over how state officials in Ohio calculated Armstrong's state sentence and/or what, if any, credit they would apply toward his state sentence. [*Id*.] Armstrong appealed to the BOP Central Office.

On February 11, 2013, Harrell Watts, Administrator of the BOP National Inmate Appeals, denied Armstrong's BP-11 appeal. [*Id*., p. 12] Watts stated that on September 18, 2003, both state and federal law enforcement officials arrested Armstrong in the State of Ohio and charged him with narcotic and weapons violations; that Armstrong was in primary federal custody when he was

6

indicted in federal court on October 14, 2003; and that when the state court in Ohio sentenced Armstrong to a 5-year prison term on April 22, 2004, he was still in primary federal custody. [*Id.*] Watts further explained that Armstrong's 180-month federal sentence commenced on October 8, 2004, and that after crediting his federal sentence with 386 days of prior custody credits, the BOP has properly calculated that Armstrong's release date, via good-time credits, is October 11, 2016. [*Id.*]

4. Armstrong's Claims in this § 2241 Proceeding

Armstrong contends that when Dayton, Ohio police officers arrested him on September 18, 2003, he was in the primary custody of the state of Ohio, not in the primary jurisdiction of federal authorities. [R. 1-1, p. 5] Armstrong bases this claim on the fact that state officials in Ohio had previously arrested him on February 20, 2003, and that the criminal proceeding in the Common Pleas Court of Montgomery County, Ohio--which resulted from his February 2003 arrest--was pending in state court when the DEA arrested him on September 18, 2003. [*Id.*] Armstrong alleges that after he was sentenced in federal court on October 8, 2004, federal officials failed or refused to return him to state custody to begin serving his state sentence. Armstrong asserts that the BOP has abused its discretion by refusing to transfer him to state custody, and that the BOP has improperly executed his sentence, in violation of federal law.

Armstrong's concern appears to be that although his state sentence was imposed in April 2004, almost six months before his federal sentence was imposed in October 2004, and that although the federal court has clarified that his 180-month federal sentence is to run concurrently with his state sentence, the State of Ohio has not, and perhaps will not, credit his state sentence with any of the time which he has served, and will continue to serve, in federal custody. Armstrong's angst on this issue likely stems from the May 13, 2009, letter from the Montgomery County Prosecutor's Office

7

to FCI-Manchester officials, stating that "...the Ohio Bureau of Sentence Computation has no record of this conviction and has, to date, given him no credit for, any concurrent jail time served." [R. 1-2, p. 3][4] Thus, Armstrong seeks an order directing the BOP to immediately transfer him to the custody of state officials in Ohio, arguing that the State of Ohio, not federal officials, had primary jurisdiction over him on September 18, 2003, and that accordingly, he should have begun serving his state sentence first, not his federal sentence.

Citing 18 U.S.C. § 3621(b), Armstrong seeks an order transferring him to state custody so that he can begin serving his concurrent state sentence. [*Id.*, p. 12] Armstrong specifically asserts that he is not seeking credit toward his federal sentence under the doctrine set forth in *Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990) [*Id.* p. 16]

## DISCUSSION
### 1. <u>Federal Primary Jurisdiction</u>

Armstrong's argument that he was in the primary custody of the State of Ohio as of September 18, 2003, is incorrect. In *Ponzi v. Fessenden*, 258 U.S. 254, 260–262 (1922), the Supreme Court first recognized the doctrine of primary jurisdiction, to provide an orderly method of prosecuting an individual who has violated the law of more than one sovereign. Under this doctrine, the sovereign that first arrests an individual has primary control or custody over him; its claim over him has priority over all other sovereigns that subsequently arrest him; it is entitled to have him serve a sentence that it imposes, before he serves any sentence imposed by another

---

[4] The former FCI-Manchester Warden reiterated this issue. Prior to submitting his most recent administrative remedies in 2012-2013, Armstrong filed an earlier set of administrative remedies between June 2009 and February 2010. In her June 15, 2009, response to Armstrong's remedy request, FCI-Manchester Warden Karen F. Hogsten stated that before the Ohio Bureau of Sentence Computation could compute Armstrong's state sentence, the Ohio Department of Corrections required that Armstrong be "delivered" to the Ohio Correctional Reception Center [CRC] for processing," and that Armstrong be "...physically processed at the [CRC] reception center...." [R. 1-2, p. 23]

8

sovereign; and it retains this priority, unless and until it has relinquished its jurisdiction to some other sovereign. *Id.*; *see also United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005); *United States v. Collier*, 31 F. App'x 161, 162 (6th Cir. 2002); *Bowman v. Wilson*, 672 F.2d 1145, 1153-54 (3d Cir. 1982); *In re Liberatore*, 574 F.2d 78, 88–89 (2nd Cir. 1978); *Rambo v. Hogsten*, No. 10–116–ART, 2010 WL 4791970 at *4 (E.D. Ky. Nov. 17, 2010) ("When a defendant violates the laws of two different sovereigns, the rule is that the sovereign which first arrests him acquires the right to prior and exclusive jurisdiction over him.") (internal quotations omitted).

Primary jurisdiction continues until the sovereign which first arrested an individual has relinquished its jurisdiction in some way. *See Banks v. United States*, No. 2:12-CV-2175, 2013 WL 3564135, at *2 (W.D. Tenn. July 11, 2013) (citing *United States v. Warren*, 610 F.2d 680, 684–85 (9th Cir. 1980); *accord Jones v. Farley*, No. 4:12–CV–0671, 2012 WL 4506002, at *3 (N.D. Ohio Sept. 28, 2012). Typically, a sovereign may only relinquish primary jurisdiction in four ways: release on bail, dismissal of the charges, release on parole, or expiration of the sentence. *Cole*, 416 F.3d at 897.

The record indicates that both state and federal officials arrested Armstrong on September 18, 2003. Even assuming that the Ohio state officials arrested Armstrong first and filed charges against him first, the state dismissed its charges against Armstrong on September 19, 2003, just one day after his arrest. When a state engages in certain conduct, such as dismissing all charges against a detainee, or releasing him upon completion of the sentence imposed or to parole, it thus relinquishes its primary jurisdiction over the detainee. *See Simms v. United States*, No. 08-43-HRW, 2009 WL 3061994, at *3 (E.D. Ky. Sept. 21, 2009); *Berry v. Sullivan*, No. 07-5965(JAP), 2007 WL 4570315, at *2 (D.N.J. Dec. 26, 2007).

When the State of Ohio dismissed its charges against Armstrong on September 19, 2013, it relinquished its primary jurisdiction over him as to the events of September 18, 2003, leaving the federal government as the primary sovereign to prosecute Armstrong on federal drug and firearm charges. The DEA immediately filed a federal criminal complaint against Armstrong in federal court on September 22, 2003, and obtained a federal warrant for Armstrong's arrest the following day. Thus, federal authorities obtained primary, or exclusive, jurisdiction over Armstrong, and they have never relinquished primary jurisdiction over him.

Admittedly, Armstrong was sentenced in state court on April 22, 2004, six months before he was sentenced in federal court on October 8, 2004, but Armstrong's earlier state court conviction stemmed not from his arrest on September 18, 2003, but instead from *earlier state court charges* filed against him in February 2003. *See State of Ohio v. Derrick A. Armstrong*, Case No. 2003 CR 00609/1 (available at http://www.clerk.co.montgomery.oh.us (last visited on January 28, 2014)).[5] Armstrong's reliance upon the chronological order of his two convictions is misplaced; it is the order of his arrest on September 18, 2003, and the state of Ohio's immediate relinquishment of jurisdiction

---

[5] The May 13, 2009, letter from Mathias H. Heck, Jr., Assistant Prosecuting Attorney in the Montgomery County Prosecuting Attorney's office, appears to be partially incorrect, as Heck states:

> In response to your Detainer Action Letter, this is to confirm that on April 21, 2004, Mr. Armstrong was sentenced to five (5) years incarceration in Montgomery County Case No. 2003CR0609/1. **Mr. Armstrong was subsequently arrested on federal charges** and is currently serving sentence in the Manchester facility with a projected release date of September 22, 2017.... (emphasis added).

[R. 1-2, p.3]

The statement highlighted in bold appears to be incorrect because Armstrong was not arrested on federal charges *after* he was sentenced in state court; he was arrested on federal charges on September 22, 2003, and was indicted in federal court on October 14, 2003, several months *before* he was sentenced on the state charges in the Ohio state court on April 22, 2004.

over Armstrong, that controls the issue of which sentence he must serve first. Contrary to Armstrong's assertion on page 5 of his Memorandum, his arrest on September 18, 2003, determines which sovereign has primary jurisdiction over him, not the fact that he was awaiting sentencing in the Common Pleas Court of Montgomery County, Ohio, on unrelated criminal charges dating back to February 2003.

Further, the fact that Armstrong subsequently made appearances in the Common Pleas Court of Montgomery County, Ohio, in Case No. 2003-CR-609/1, did not deprive the federal authorities of primary and exclusive jurisdiction over him as to the events of September 18, 2003. The sovereign that first arrests a prisoner maintains primary custody, even when the prisoner is taken to another court under a writ of habeas corpus *ad prosequendum*; in such instances, the prisoner is merely "on loan" to the federal sovereign. *Thomas v. Whalen*, 962 F.2d 358, 361 n. 3 (4th Cir.1992); *see also Huffman v. Perez*, 230 F.3d 1358 (Table), 2000 WL 1478368 (6th Cir. Sept. 27, 2000); *Easley v. Steep*, 5 F. App'x 541 (7th Cir. 2001); *Silva–Rodriguez v. O'Brien*, No. 7:09-CV-497, 2010 WL 2326539, at *3 (W.D. Va. June 9, 2010) ("Lending an inmate via a writ of habeas corpus *ad prosequendum* to another jurisdiction does not relinquish a sovereign's primary jurisdiction."); *Pease v. Cauley*, No. 08-CV-144-HRW, 2009 WL 1505734, at *3 (E. D. Ky. May 29, 2009). This principle is equally true even when the "loan" to the second sovereign is a lengthy one. *See*, *e.g.*, *Huffman*, 2000 WL 1478368, at *2; *Rios v. Wiley*, 201 F.3d 257, 271–74 (3d Cir. 2000); *Banks v. Wilson*, No. 6:09-CV-350-GFVT, 2009 WL 5125282, at *3 (E.D. Ky. Dec. 17, 2009).

Under the facts and the foregoing legal authority, Armstrong has been, and remains, in the primary jurisdiction of federal authorities serving his sentence that resulted from his arrest on September 18, 2003. Accordingly, Armstrong must serve his 180-month federal sentence before he

11

can begin serving his state sentence. *See* 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed, or until earlier released for satisfactory behavior pursuant to the provisions of section [18 U.S.C.] 3624.").

According to the BOP's official website, Armstrong's projected early release date, via good-time credits, is October 11, 2016. *See* http://www.bop.gov/Locate/Tabs.xhtml (last visited January 28, 2014).[6] After Armstrong completes service of his current federal sentence, the United States Marshals will then deliver him to the custody of Ohio Department of Corrections, pursuant to the April 2006 detainer lodged against him by the State of Ohio. At that time, Armstrong can begin serving his state sentence imposed a result of his February 2003 criminal offenses. Once Armstrong enters the primary custody of the Ohio Department of Corrections, the Ohio Bureau of Sentence Computation will calculate the exact term of his state sentence.

If, at that time, Armstrong believes that the Ohio Bureau of Sentence Computation refuses to credit his state sentence with all or some of the time which he has served in federal custody under applicable Ohio state law, he is free to file an action in the Ohio state courts challenging the manner in which the Ohio Bureau of Sentence Computation is calculating his state sentence under state law.[7]

---

[6] Armstrong did not physically arrive at FCI-Manchester until March 14, 2005, *see* BOP Response at R.1-2, p. 11, but the BOP determined that he began serving his federal sentence on October 8, 2004, the date on which his federal sentence was imposed. [*Id*.; and p. 12] The date of October 8, 2004, was the earliest possible date on which Armstrong could have begun serving his federal sentence. *See* BOP Program Statement 5880.28, *Sentence Computation Manual* (CCCA of 1984), § 3(b) "Commencement (Beginning Date) of Sentence," which provides that a term of imprisonment cannot commence earlier than the date on which sentence was imposed. The BOP has also credited Armstrong's federal sentence with 386 days (over a year) of prior custody credits. *See* BOP Responses [R. 1-2, pp. 11-12].

[7] On this issue, Armstrong is reminded that when he appealed the denial of the prior § 2241 habeas petition which he filed in the Western District of Ohio, and argued on appeal that his Ohio state sentence ran concurrently with his yet-to-be imposed federal sentence, the Sixth Circuit rejected that claim, noting that on August 3, 2009, the judge who sentenced him in the Common Pleas Court of Montgomery County filed an "Amended Termination Entry" stating

However, neither the BOP nor this Court can dictate to the Ohio Bureau of Sentence Computation how Armstrong's state sentence should be calculated, and/or what, if any, credits should applied to his state sentence under Ohio state law. A federal court cannot issue a writ of habeas corpus for violations of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). This concept also applies to claims challenging the amount of jail credit applied (or not applied) to state sentences under state law; such claims are a matter of state law and are not cognizable on federal habeas review. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Kipen v. Renico*, 65 F. App'x 958, 959 (6th Cir. 2003) ("[T]he actual computation of [a petitioner's] prison term involves a matter of state law that is not cognizable under 28 U.S.C. § 2254."); *Hansend v. Lafler*, No. 1:10-CV-530, 2013 WL 5428726, at *12 (W.D. Mich., Sept. 26, 2013) (recommending the denial of petitioner's request for jail credit for time served because such claim was a matter of state law and was not cognizable on federal habeas review).

      Finally, if Armstrong wishes at this time to challenge the validity of the Ohio detainer under Ohio law, he is free to do so by filing an action in state court. This Court takes no position on whether such an action would have merit.

### 2. **Armstrong's Transfer Request**

---

as follows:

> "This Court makes no determination regarding whether this sentence will be consecutive or concurrent to any federal sentence since Defendant had not been sentenced in federal court when this sentence was imposed."

*Armstrong v. Hogsten*, No. 10-4432, p. 2 (6th Cir. Feb. 29, 2012) (citing August 3, 2009, "Amended Termination Entry" from *State of Ohio v. Derrick A. Armstrong*, Case No. 2003 CR 00609/1, [available at http://www.clerk.co.montgomery.oh.us])

The Court has established that Armstrong is currently in exclusive federal jurisdiction and that he must serve his 180-month federal sentence before he can begin serving his state sentence. Armstrong relies on 18 U.S.C. § 3621(b) as authority for his request for immediate transfer to a state prison in Ohio to begin serving his state sentence. However, another statute, 18 U.S.C. § 3623, establishes that Armstrong has no constitutional right to be transferred to a state prison facility until he has completed service of his 180-month federal sentence.

As previously noted, between June 2009 and February 2010, Armstrong filed an earlier set of grievances (Remedy No. 543779-A2), seeking a transfer to an Ohio state prison facility, which is essentially the same relief he now seeks in this § 2241 proceeding. On February 18, 2010, Harrell Watts denied Armstrong's final administrative appeal on this issue, stating that under BOP Program Statement 5140.35, *Transfer of a Prisoner to State Custody Prior to Release from the Federal Sentence*, a transfer to state custody was not warranted. [R. 1-2, p. 25]

Watts correctly explained that under 18 U.S.C. § 3623(1), a federal prisoner who has been convicted of a state felony may be transferred to state custody *before* he has served his federal sentence only if "the Governor or other executive authority of the State" has submitted to the BOP a written request seeking that inmate's transfer to State custody. Further, the Director of the BOP must find that the transfer "would be in the public interest." § 3623(3); *see also* BOP Program Statement 5140.35 § 6(a). If the transfer request from the State is approved, "State agents, as approved by the Governor, or other executive authority, may assume custody directly from the Federal institution where the prisoner is confined, regardless of whether that Federal institution is located in that State." BOP Program Statement 5140.35 § 8. Watts further correctly explained to Armstrong that no agent from the State of Ohio, and no executive authority (such as the Governor

of Ohio) had requested that he be transferred from federal custody to state custody. [R. 1-2, p. 25] Thus, under 18 U.S.C. § 3623 and BOP Program Statement 5140.35, Armstrong has no right to be transferred to a state prison in Ohio at this time.

Further, all transfers and prison assignments are functions wholly within the discretion of the BOP. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners generally have no liberty interest in their placement or classification while incarcerated, *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976), and have no right to be housed in a particular institution or a particular part of an institution, *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). It is only when a prisoner demonstrates he "is in custody in violation of the Constitution or laws or treaties of the United States" that habeas relief is available. 28 U.S.C. § 2241(c)(3) As explained, however, the BOP's refusal to transfer Armstrong to Ohio authorities does not establish he is being held in violation of the Constitution, because the State of Ohio has not requested that Armstrong be transferred to its custody under the procedure set forth in 18 U. S. C. § 3623.

Finally, Armstrong cites 18 U.S.C. § 3621(b) as authority for his transfer request, but that statute does not control this case. Under § 3621(b), the BOP has discretion to designate "any available penal or correctional facility" as the place where a federal inmate can serve his federal sentence, but only after it considers five separate criteria set forth in the statute. *See* § 3621(b) (1)-(5). However, the BOP's discretionary action in this regard typically occurs in connection with a federal prisoner's halfway house placement under 18 U.S.C. § 3624(c), known as the "Second Chance Act." The pending detainer from the State of Ohio, may, however, render Armstrong ineligible for halfway house placement. Even assuming that Armstrong is eligible for such

placement, consideration for halfway house placement under the Second Chance Act is not appropriate until a federal prisoner approaches "...the final months of that term (not to exceed 12 months)...." *See* 18 U.S.C. § 3624(c). Armstrong's projected release date is not until October 11, **2016**, more than two years from now. Thus, it does not appear that Armstrong is currently eligible for consideration for halfway placement under § 3624(c) and § 3621(b).

For these reasons, Armstrong has not established that he is entitled to relief under 28 U.S.C. § 2241. His petition will be denied.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The Clerk of the Court shall **SUBSTITUTE** "A.W." Salinas, Acting Warden of FCI-Manchester, as the Respondent to this proceeding, in place of "K." Edenfield;

(2) Derrick A. Armstrong's 28 U.S.C. § 2241 petition for writ of habeas corpus [R. 1] is **DENIED**; and

(3) This action will be **DISMISSED**, *sua sponte*, from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the substituted Respondent.

This January 30, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY